1
2
3
4
5
6
7
8              UNITED STATES DISTRICT COURT
9              CENTRAL DISTRICT OF CALIFORNIA
10

11   MERI NUHBEGOVICH,                )     NO. CV 14-2285 AGR
12              Plaintiff,            )
13              v.                    )
14   CAROLYN W. COLVIN,              )     MEMORANDUM OPINION AND
     Commissioner of Social Security, )     ORDER
15                                    )
16              Defendant.            )
17   _____)

18        Plaintiff Meri Nuhbegovich filed this action on April 1, 2014.   Pursuant to

19   28 U.S.C. § 636(c), the parties consented to proceed before the magistrate judge.

20   (Dkt. Nos. 9, 10.)  On November 6, 2014, the parties filed a Joint Stipulation

21   ("JS") that addressed the disputed issues.  The court has taken the matter under

22   submission without oral argument.

23        Having reviewed the entire file, the court affirms the decision of the

24   Commissioner.

25
26
27
28

# I.

## PROCEDURAL BACKGROUND

On August 1, 2011, Nuhbegovich filed an application for disability insurance benefits and alleged an onset date of March 14, 2011.[1]  AR 20, 86, 93. The application was denied.  AR 20, 51.  Nuhbegovich requested a hearing before an Administrative Law Judge ("ALJ").  AR 57.  On July 12, 2012, the ALJ conducted a hearing at which Nuhbegovich testified.  AR 31-44.  The ALJ left the record open for a psychiatric evaluation and the submission of additional medical evidence.  AR 42.  The psychiatric evaluation was performed on August 25, 2012. AR 235-43.  On September 24, 2012, the ALJ issued a decision denying benefits. AR 17-27.  On January 28, 2014, the Appeals Council denied the request for review.  AR 1-5.  This action followed.

# II.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court reviews the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards.  *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995) (per curiam); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  *Moncada*, 60 F.3d at 523.  In determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence.  *Drouin*, 966 F.2d at 1257.  When the evidence is susceptible to more than one rational interpretation, the court must

---

[1]  Nuhbegovich testified that her onset date was actually July 4, 2011, when her mother was killed in an accident.  Administrative Record ("AR") 39-40.

1    defer to the Commissioner's decision.  *Moncada*, 60 F.3d at 523.

2                                                      **III.**

3                                              **DISCUSSION**

4          **A.   Disability**

5          A person qualifies as disabled, and thereby eligible for such benefits, "only

6    if his physical or mental impairment or impairments are of such severity that he is

7    not only unable to do his previous work but cannot, considering his age,

8    education, and work experience, engage in any other kind of substantial gainful

9    work which exists in the national economy."  *Barnhart v. Thomas*, 540 U.S. 20,

10   21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003).

11         **B.   The ALJ's Findings**

12         The ALJ found that Nuhbegovich meets the insured status requirements

13   through December 31, 2015.  AR 22.

14         Following the five-step sequential analysis applicable to disability

15   determinations, *Lounsbury v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006),[2] the

16   ALJ found that Nuhbegovich had the severe impairment of major depression.  AR

17   22.  She had the residual functional capacity ("RFC") to perform a full range of

18   work at all exertional levels and could understand, remember and carry out

19   simple and complex instructions; interact with supervisors, coworkers and the

20   public; maintain concentration, attention, persistence and pace; adapt to stresses

21   common to a normal work environment; maintain regular attendance in the work

22   place and perform work on a consistent basis; and perform work activities without

23   special or additional supervision.  AR 23.  She could perform past relevant work

24   as an office manager.  AR 27.

25   _____

26         [2] The five-step sequential analysis examines whether the claimant
     engaged in substantial gainful activity, whether the claimant's impairment is
27   severe, whether the impairment meets or equals a listed impairment, whether the
     claimant is able to do his or her past relevant work, and whether the claimant is
28   able to do any other work.  *Lounsbury*, 468 F.3d at 1114.

                                                     3

## C.   RFC Determination

The ALJ gave controlling weight to Nuhbegovich's treating psychiatrist, Dr. Moeller.  AR 25.  On July 19, 2012, approximately one year after Nuhbegovich's mother died in a tragic accident, Dr. Moeller opined that she did not have limitations in her ability to understand and remember simple instructions, and had mild limitations in her ability to carry out simple instructions; make judgments on simple work-related decisions; understand, remember and carry out complex instructions; and make judgments on complex work-related decisions.  AR 25, 216-18.  Nuhbegovich's ability to interact appropriately with supervisors, co-workers and the public, as well as her ability to respond to changes in routine, would not be affected by her impairment.  AR 217.

Nuhbegovich contends the ALJ failed to articulate legally sufficient reasons for rejecting the opinions of Dr. Maxwell, a treating psychologist, and Dr. Chamberlain, an examining physician.

### 1.   Dr. Maxwell

An opinion of a treating physician is given more weight than the opinion of non-treating physicians.  *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  To reject an uncontradicted opinion of a medically acceptable treating source, an ALJ must state clear and convincing reasons that are supported by substantial evidence.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).  When a treating physician's opinion is contradicted by another doctor, "the ALJ may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record.  This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  *Orn*, 495 F.3d at 632 (citations and quotation marks omitted).  "When there is conflicting medical evidence, the Secretary must determine credibility and resolve the conflict."  *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002).

4

1    Dr. Maxwell completed a mental disorder questionnaire on September 6,

2 2011, approximately two months after the accident and seven weeks after the

3 beginning of treatment.  AR 200-05.  Nuhbegovich's general appearance was

4 presentable but her posture was hunched over and "drawn inwards."  AR 24, 200.

5 She appeared to be in a fog" and dabbed tears away during therapy sessions.

6 She cannot go to the corner where her mother was hit by a car or go upstairs at

7 home because she would be able to see the corner from her window.  She

8 complained of depression and posttraumatic stress disorder.  AR 24, 200.  Her

9 general attitude was tearful, frightened, yet hostile.  AR 24, 202.  She had

10 perceptual or thinking disturbance, impaired judgment due to shock and traumatic

11 loss, difficulty sleeping, poor concentration and paranoid ideation.  AR 24, 203.

12 She occasionally got assistance from neighbors and friends with shopping and

13 cooking.  AR 24, 203.  She could not successfully look for a job because of her

14 mental condition.  AR 24, 203.  "Patient is all consumed in mother's death and

15 resulting depression and anxiety are extremely overwhelming."  AR 203.

16 Nuhbegovich stated she had poor memory and concentration.  AR 24, 204.  Dr.

17 Maxwell diagnosed Nuhbegovich with major depression and anticipated that

18 significant change was likely to occur between 9 and 12 months.  AR 25, 205.

19    The ALJ gave "less weight" to Dr. Maxwell's opinions because she had

20 treated Nuhbegovich for only two months, which was right after the traumatic loss

21 of her mother.  AR 25; *see Orn*, 495 F.3d at 631 (ALJ may consider treating

22 physician's length of treatment).  Moreover, Dr. Maxwell herself anticipated

23 significant change between 9 and 12 months with medication and therapy.  AR

24 25, 205.

25    Nuhbegovich argues that she submitted to the Appeals Council Dr.

26 Maxwell's summary of her medical records for the period July 19, 2011 through

27 November 30, 2012.  AR 246-51.  Given that the Appeals Council considered the

28 new evidence, this court also considers it.  AR 5; *see Brewes v. Comm'r*, 682

5

1
2
3
4

F.3d 1157, 1163 (9th Cir. 2012) ("when the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence").

5
6
7
8
9
10
11
12
13
14
15

Dr. Maxwell's summary cover the treatment period already addressed in the September 6, 2011 mental disorder questionnaire. AR 247-49. Nuhbegovich had five additional treatment sessions in September-October 2011. AR 249-50. On September 12, Nuhbegovich was still in the anger stage. She and Dr. Maxwell developed a plan to network through temporary agencies and get a job. AR 249. Nuhbegovich discussed the difficulty of finding a job "in this economy" because of "her age" and the fact that she had not worked full time since 2008. *Id.* In subsequent therapy sessions, Nuhbegovich reported trying to get a job but feeling disconnected from the work environment. She felt her cognitive functioning was altered due to her mother's death. *Id.* On October 11, 2011, Nuhbegovich reported she was doing better. AR 250.

16
17
18
19
20
21
22
23
24
25

In July 2012, Nuhbegovich called Dr. Maxwell shortly after the one-year anniversary of her mother's death. She reported that she was not approved for disability and asked Dr. Maxwell to fill out paperwork. Dr. Maxwell responded that she had not seen Nuhbegovich in eight months. Nuhbegovich scheduled an appointment on September 13, 2012. Nuhbegovich reported that she had been doing a bit better but did not have the cognitive functioning she had before her mother's death. She was concerned about the status of her case against the driver who hit her mother, disappointed in the denial of her disability claim, and concerned about her unemployment, coping skills and relationship with her sister.[3] *Id.* Dr. Maxwell provided information to Nuhbegovich's attorney. As of

26

27
28

---

[3] Nuhbegovich's sister was left in charge of her mother's money. AR 248. In September 2011, Nuhbegovich was frustrated at having to ask her sister for her mother's money. AR 249. In September 2012, however, Nuhbegovich

1    December 20, 2012 (the date of Dr. Maxwell's letter to the attorney),

2    Nuhbegovich had not scheduled any further appointments.  AR 251.

3           The ALJ's reasons for giving less weight to Dr. Maxwell's opinions remain

4    valid and supported by substantial evidence when taking into account Dr.

5    Maxwell's summary.  The treatment length in September 2012 was even shorter

6    (one visit) for the purpose of obtaining Dr. Maxwell's opinions for her disability

7    claim.  Moreover, the summary was based on Nuhbegovich's self reporting.

8                2.   Dr. Chamberlain

9           An examining physician's opinion constitutes substantial evidence when it

10   is based on independent clinical findings.  *Orn*, 495 F.3d at 631.  When, as here,

11   an examining physician's opinion is contradicted, "it may be rejected for 'specific

12   and legitimate reasons that are supported by substantial evidence in the record.'"

13   *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008)

14   (citation omitted).

15          The ALJ gave little weight to Dr. Chamberlain's opinion because it was

16   inconsistent with the record as a whole and with Dr. Moeller's treating opinion,

17   and was based on only one visit.  AR 25.

18          Dr. Chamberlain examined Nuhbegovich on August 25, 2012.  AR 235.

19   During the mental status examination, Nuhbegovich had coherent and organized

20   thought processes and content.  AR 25, 237-38.  She appeared to be of above

21   average intelligence.  AR 238.  She was alert and had normal speech.  AR 25,

22   238.  She was tearful and had a depressed mood and restricted affect.  AR 25,

23   238.  She could perform serial threes from 20 but could not  perform serial 7s

24   from 100.  AR 25, 238.  Her insight and judgment were intact.  AR 239.  Dr.

25   Chamberlain diagnosed major depressive disorder, recurrent severe without

26   psychotic features, with a Global Assessment of Functioning ("GAF") score of

27   _____

28   reported "she can come back to therapy because she is getting money from her
     sister."  AR 250.

7

1   45.[4]  AR 25, 239.

2        Dr. Chamberlain opined that Nuhbegovich had a mild impairment in her

3   ability to understand, remember, and carry out simple one or two-step job

4   instructions; associate with day-to-day work activity, including attendance and

5   safety; accept instructions from supervisors; maintain regular attendance and

6   perform work activities on a consistent basis; and perform work activities without

7   special or additional supervision.  AR 25, 240.  She was moderately impaired in

8   her ability to do detailed and complex instructions, and maintain concentration,

9   attention, persistence and pace.  AR 25, 240.  She was markedly impaired in her

10   ability to relate and interact with co-workers and the public due to her irritability.

11   AR 25, 240.

12        The ALJ's finding that Dr. Chamberlain's opinion was inconsistent with the

13   record as a whole is supported by substantial evidence.  AR 25.  Treatment notes

14   show that medication helped Nuhbegovich's symptoms and that she made

15   progress with treatment.  AR 24, 185-86, 188, 225, 229, 250.  Although

16   Nuhbegovich reported isolating herself, she spent time with family and friends.

17   AR 26, 135-36, 203, 237.  She told Dr. Moeller in January 2012 that she was

18   going with her sister and brother-in-law to Hawaii.  AR 232.  The record shows no

19   psychiatric hospitalizations.  AR 200, 236.  Nuhbegovich actively looked for work

20   and went on interviews.  AR 249.  An ALJ can properly rely on the opinions of a

21   treating psychiatrist to reject the opinion of an examining physician.  The ALJ

22   articulated specific and legitimate reasons supported by substantial evidence in

23   the record for discounting Dr. Chamberlain's opinion.

24        Nuhbegovich contends that if the ALJ properly gave controlling weight to

25   Dr. Moeller's opinions, the ALJ erred in not having a vocational expert testify as to

26   _____

27       [4]  A GAF score of 45 indicates serious symptoms or serious impairment in
social, occupational, or school functioning.  *See* American Psychiatric

28   Association, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed.
Text Revision 2000).

1   whether the limitations in her RFC would prevent her from performing past

2   relevant work at step four of the sequential analysis.  Nuhbegovich relies primarily

3   on *Hutton v. Astrue*, 491 Fed. Appx. 850 (9th Cir. 2012). In *Hutton*, the ALJ

4   determined at step two that the claimant had mild limitations in concentration,

5   persistence of pace, and that the claimant's PTSD was non-severe.  At step four,

6   however, the ALJ excluded the claimant's PTSD from consideration, including the

7   finding of mild limitations.  *Id.* at 851.  The Ninth Circuit reversed and found that

8   the ALJ erred in disregarding his own finding of mild limitations.  *Id.* at 850-51.

9       In this case, the ALJ did not disregard his prior findings regarding

10  Nuhbegovich's mental limitations at step four of the sequential analysis.  "At step

11  four of the sequential analysis, the claimant has the burden to prove that [s]he

12  cannot perform his prior relevant work 'either as actually performed or as

13  generally performed in the national economy.'"  *Carmickle*, 533 F.3d at 1166

14  (citation omitted).  "Although the burden of proof lies with the claimant at step

15  four, the ALJ still has a duty to make the requisite factual findings to support his

16  conclusion."  *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001).  "This is done

17  by looking at the 'residual functional capacity and the physical and mental

18  demands' of the claimant's past relevant work."  *Id.* at 844-45.  When an ALJ

19  relies on the DOT for a job description of a claimant's past relevant work, the ALJ

20  must "definitively explain" any deviation between the Dictionary of Occupational

21  Titles ("DOT") and the claimant's noted limitations.  *Id.* at 847.  Nuhbegovich has

22  not identified any error by the ALJ.

23      **D.    Credibility**

24      Nuhbegovich contends the ALJ erred in discounting her subjective

25  symptom testimony.

26      "To determine whether a claimant's testimony regarding subjective pain or

27  symptoms is credible, an ALJ must engage in a two-step analysis."  *Lingenfelter*

28  *v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  At step one, "the ALJ must

1  determine whether the claimant has presented objective medical evidence of an

2  underlying impairment 'which could reasonably be expected to produce the pain

3  or other symptoms alleged.'" *Id.* (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344

4  (9th Cir. 1991) (en banc)).

5       "Second, if the claimant meets this first test, and there is no evidence of

6  malingering, the ALJ can reject the claimant's testimony about the severity of her

7  symptoms only by offering specific, clear and convincing reasons for doing so."

8  *Lingenfelter*, 504 F.3d at 1036 (citation and quotation marks omitted).  "In making

9  a credibility determination, the ALJ 'must specifically identify what testimony is

10 credible and what testimony undermines the claimant's complaints[.]'" *Greger v.*

11 *Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (citation omitted).

12      In weighing credibility, the ALJ may consider factors including:  the nature,

13 location, onset, duration, frequency, radiation, and intensity of any pain;

14 precipitating and aggravating factors (e.g., movement, activity, environmental

15 conditions); type, dosage, effectiveness, and adverse side effects of any pain

16 medication; treatment, other than medication, for relief of pain; functional

17 restrictions; the claimant's daily activities; and "ordinary techniques of credibility

18 evaluation."  *Bunnell*, 947 F.2d at 346 (citing Social Security Ruling 88-13)

19 (quotation marks omitted).[5]  The ALJ may consider:  (a) inconsistencies or

20 discrepancies in a claimant's statements; (b) inconsistencies between a

21 claimant's statements and activities; (c) exaggerated complaints; and (d) an

22 unexplained failure to seek treatment.  *Thomas*, 278 F.3d at 958-59.

23      The ALJ found that Nuhbegovich's medically determinable impairment

24 could reasonably be expected to cause the alleged symptoms, but her

25

26 _____

27      [5]  Social Security rulings do not have the force of law.  Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are

28 plainly erroneous or inconsistent with the Act or regulations."  *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

statements concerning the intensity, persistence and limiting effects of her

symptoms were not credible to the extent they were inconsistent with the RFC.

AR 24.  The ALJ relied on three reasons: (1) the objective evidence did not

support the degree of Nuhbegovich's allegations; (2) her activities of daily living

were not consistent with the alleged degree of pain and impairment; and (3)

Nuhbegovich stopped working because she was laid off and continued to look for

work after the onset date.  AR 26.

### 1. Objective Evidence

Although lack of objective medical evidence supporting the degree of

limitation "cannot form the sole basis for discounting pain testimony," it is a factor

that an ALJ may consider in assessing credibility.  *Burch v. Barnhart*, 400 F.3d

676, 681 (9th Cir. 2005).  The ALJ found that Nuhbegovich's subjective

complaints and alleged limitations were out of proportion to the objective clinical

findings and observed functional restrictions.  AR 26.  As discussed above, the

ALJ's findings are supported by substantial evidence.  The ALJ found no

evidence that Nuhbegovich's medication side effects were so severe that she

required medication changes.  The ALJ found no evidence that Nuhbegovich had

any physical impairments that would limit her physical functioning.  *Id.*

### 2. Activities of Daily Living

An ALJ may consider a claimant's daily activities when weighing credibility.

*Bunnell*, 947 F.2d at 346.  The ALJ found that Nuhbegovich's activities of daily

living supported the RFC.  AR 26.  The ALJ noted that in March 2011,

Nuhbegovich was the primary care giver for her mother until she died in July

2011.  AR 26, 168.  Nuhbegovich lives alone and is able to manage her personal

care without assistance, drive a car, grocery shop, manage finances and perform

household chores.  AR 26, 237.  She has a fair relationship with family and

friends.  AR 26, 131-34, 237.  When the evidence is susceptible to more than one

rational interpretation, the court must defer to the Commissioner's decision.

1    *Moncada*, 60 F.3d at 523.

2              3. <u>Ability to Work</u>

3         The ALJ noted that Nuhbegovich stopped working because she was laid

4    off and not because of a disabling impairment.  AR 26, 180.  An ALJ may

5    consider the reason that a claimant stopped working.  *See Bruton v. Massanari*,

6    268 F.3d 824, 826 (9th Cir. 2001).  Nuhbegovich argues that she testified that her

7    disability actually began on July 4, 2011, when her mother died, not on the

8    alleged onset date of March 14, 2011.  Therefore, she contends, any discussion

9    of her work prior to July 4, 2011 is irrelevant.  However, Nuhbegovich looked for

10   work after she was laid off and after the onset date.  AR 26, 168, 249.  The ALJ

11   relied on this evidence to infer that Nuhbegovich believed she was able to work.

12   AR 26.  The ALJ's finding is supported by substantial evidence.

13        When, as here, "the ALJ's credibility finding is supported by substantial

14   evidence in the record, we may not engage in second-guessing."  *Thomas*, 278

15   F.3d at 959 (citing *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600

16   (9th Cir. 1999)).  The ALJ did not err in his credibility assessment.

17                              **IV.**

18                             **ORDER**

19        IT IS HEREBY ORDERED that the decision of the Commissioner is

20   affirmed.

21        IT IS FURTHER ORDERED that the Clerk serve copies of this Order and

22   the Judgment herein on all parties or their counsel.

23

24

25   DATED: December 29, 2014

26                              ALICIA G. ROSENBERG
                               United States Magistrate Judge

27

28

                               12